J-S14013-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY ESTAVON FERNANDEZ | : | |
| | : | |
| Appellant | : | No. 821 MDA 2023 |

Appeal from the Judgment of Sentence Entered May 1, 2023
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002569-2021

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY LAZARUS, P.J.:          **FILED: MAY 30, 2024**

Anthony Estavon Fernandez appeals from the judgment of sentence, entered in the Court of Common Pleas of York County, following his conviction of materially false written statement – purchase, delivery, transfer of firearm.[1] After careful review, we affirm.

At trial, the Commonwealth presented the testimony of Troy Butcher, the store manager of the Gun Bunker,[2] and Southern Regional Police Department Detective Richard Blais.  Butcher testified that on June 1, 2020, Fernandez entered the store and attempted to buy two firearms.[3]  **See id.** at

---

[1] 18 Pa.C.S.A. § 6111(g)(4)(ii).

[2] The Gun Bunker, LLC, is located in Shrewsbury, Pennsylvania.  **See** N.T. Jury Trial (Day 1), 2/27/23, at 59-60.

[3] Fernandez attempted to purchase a PS-90, a submachine gun, and a Stevens 320 shotgun.  **See id.** at 71.

60. Butcher testified that Fernandez, like any other customer attempting to purchase a firearm, was required to fill out ATF Form 4473 (Form), which is a firearms form promulgated by the Bureau of Alcohol, Tobacco and Firearms. *See id.* at 61. Butcher testified that the Form is required by federal regulation and the purpose of the form is to allow the Pennsylvania State Police (PSP) to perform a background check on a prospective gun purchaser. *See id.* Butcher further explained that there are two parts to the Form. *See id.* at 62. The customer fills out the first part, and the store clerk fills out the second part and submits the form to the Pennsylvania Instant Check System (PICS). *See id.* at 62-63. Butcher testified that PICS then submits the customer's driver's license to PSP for a background check. *See id.*

Butcher identified the Form that he and Fernandez filled out. *See id.* at 63. Butcher testified that he watched Fernandez fill out the customer portion of the Form. *See id.* at 64. The Commonwealth requested that Fernandez's ATF Form 4473 be marked and admitted as Commonwealth Exhibit 1. *See id.* at 61-62. Butcher read from Commonwealth Exhibit 1, which states, in relevant part, as follows:

> I certify that my answers in section A are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473. I understand that answering "yes" to question 11.a. if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law, and may also violate state and/or local law. I understand that a person who answers "yes" to any of the questions 11.b. through 11.i. and/or 12.b. through 12.c. is prohibited from purchasing or receiving a firearm. I understand that a person who answers "yes" to question 12.d.1. is prohibited from receiving or possessing a

- 2 -

firearm, unless the person answers "yes" to question 12.d.2. and provides the documentation required in 18.c. I also understand that making any false oral or written statement or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I further understand that the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of federal law. (***See Instructions for Question 14.***).

Commonwealth Exhibit 1, (Fernandez's ATF Form 4473) (emphasis in original).

Butcher testified that he watched Fernandez sign and date the document. ***See*** N.T. Jury Trial (Day 1), 2/27/23, at 66-67. Commonwealth Exhibit 1 further shows the following answers to questions 11.a. through 11.i.:

11. Answer the following questions by checking or marking **"yes" or "no"** in the boxes to the right of the questions.

a. Are you the actual transferee/buyer of the firearm(s) listed on this form? . . . [Fernandez marked "yes"]

b. Are you under indictment or information in any court for a felony, or any other crime for which the judge could imprison you for more than one year? [Fernandez marked "no"]

c. Have you ever been convicted in any court of a felony, or any other crime for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation? [Fernandez marked "no"]

d. Are you a fugitive from justice? [Fernandez marked "no"]

e. Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance? . . . [Fernandez marked "no"]

f. Have you ever been adjudicated as a mental defective OR have you ever been committed to a mental institution? [Fernandez marked "no"]

g. Have you ever been discharged from the Armed Forces for dishonorable conditions? [Fernandez marked "no"]

h. **Are you subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner**? [Fernandez marked "no"]

i. Have you ever been convicted in any court of a misdemeanor crime of domestic violence? [Fernandez marked "no"]

Commonwealth Exhibit 1, (Fernandez's ATF Form 4473) (some emphasis omitted, emphasis in paragraph "h." added).

Butcher testified that after the Form was completed, he submitted it to the owner of the Gun Bunker, who then filed the Form with PICS. *See* N.T. Jury Trial (Day 1), 2/27/23, at 69. Butcher testified that PICS denied Fernandez's request to purchase firearms that same day, June 1, 2020. *See id.* at 70. Butcher did not tell Fernandez the specific reason for the denial. *See id.*

Detective Blais testified that, on January 4, 2021, he received a request from PSP to investigate Fernandez's June 1, 2020, denial to purchase a firearm. *See id.* at 80-81. Detective Blais testified that he received a copy of Fernandez's ATF Form 4473 from the Gun Bunker. *See id.* Detective Blais also testified that, as part of PSP's referral for the investigation, PSP included a copy of a protection from abuse (PFA) order against Fernandez. *See id.* at 81. Detective Blais identified the PFA order, which the Commonwealth marked, and the trial court admitted, as Commonwealth Exhibit 2. *See id.* at 81-82. Detective Blais testified that the PFA order was entered on docket

number 2020-FC-000674-12, and the order was dated April 23, 2020. **See id** at 82. Following this testimony, the trial court took judicial notice that the PFA order was a final PFA order entered by the Honorable Matthew Menges of the Court of Common Pleas of York County. **See id.**

Detective Blais testified that the PFA order was sought by Fernandez's wife, Shelise Fernandez, against Fernandez. **See id.** at 82-83 (Detective Blais testifying Fernandez is identified by name and date of birth on PFA order); **see also** Commonwealth Exhibit 2, (PFA order). The PFA order reads, in relevant part, that "[Fernandez] shall not abuse, harass, stalk, threaten, or attempt to threaten to use physical force against any of the above persons in any place where they might be found." Commonwealth Exhibit 2, (PFA order). Detective Blais testified that the PFA order was effective on the date of entry, April 23, 2020, and did not expire until January 31, 2021. **See** N.T. Jury Trial (Day 1), 2/27/23, at 84. The PFA order further reflected that Fernandez attended the PFA hearing telephonically. **See** Commonwealth Exhibit 2, (PFA order).

Following the Commonwealth's evidence, Fernandez testified in his own defense. **See** N.T. Jury Trial (Day 1), 2/27/23, at 95-118. Fernandez testified that he attempted to buy firearms on June 1, 2020, and filled out the Form identified by the Commonwealth. **See id.** at 95-101. Fernandez further identified the PFA order and testified that he had it with him on June 1, 2020, when he attempted to purchase the firearms. **See id.** at 99-100. Fernandez testified, on cross-examination, that he had been served with the PFA order,

and that he had attended the hearing by phone. *See id.* at 103-06.

Fernandez further testified, on cross-examination, as follows:

> [Prosecutor]: And then for the other questions that you answered ["]no["], excluding 11.h., you answered those questions ["]no["] because those are, in fact, the truthful answers to those questions, correct?
>
> [Fernandez]: Correct.
>
> [Prosecutor]: **Okay. But the truthful answer to question 11.h. was ["]yes[,"] correct?**
>
> [Fernandez]: **Correct.**
>
> [Prosecutor]: And that's because the language that's in this question has a lot of similarities to the language that's in the PFA order that we previously went over, the harassing, stalking, and threatening language, right?
>
> [Fernandez]: Correct.
>
> [Prosecutor]: So[,] you were able to answer every other one of these questions accurately, right?
>
> [Fernandez]: Yes.
>
> [Prosecutor]: Even though you say you were in a hurry, you were still able to answer them accurately?
>
> [Fernandez]: Yes.

*Id.* at 111 (emphasis added).

Fernandez testified that, on June 2, 2020, he submitted a PICS "Challenge form," which was marked and admitted as Defense Exhibit 1, in which he attempted to challenge his June 1, 2020 denial to purchase firearms. *See id.* at 101, 117; *see also* Defense Exhibit 1, (PICS Challenge form). On his PICS Challenge form, Fernandez initially answered "no" to the question

- 6 -

"are you the subject of a current protection from abuse order," but then checked "yes" and initialed next to the question. ***See*** N.T. Jury Trial (Day 1), 2/27/23, at 100-01; ***see also*** Defense Exhibit 1, (PICS Challenge form).

On March 15, 2021, the Commonwealth filed a criminal complaint against Fernandez, alleging that Fernandez had made a materially false written statement on the Form. Fernandez waived his preliminary hearing and proceeded to his formal arraignment, for which he did not appear.[4]

Ultimately, on February 27-28, 2023, Fernandez proceeded to a jury trial, after which he was convicted of the above-mentioned offense. The trial court deferred sentencing and ordered the preparation of a pre-sentence investigation report. On May 1, 2023, the trial court conducted a sentencing hearing and sentenced Fernandez to a period of 16 to 32 months' imprisonment.

Fernandez filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Fernandez now raises the following claim for our review: "Whether there was insufficient evidence to support [] Fernandez's conviction of [materially false written statement – purchase, delivery, transfer of firearm] when he had neither the

---

[4] Fernandez had left Pennsylvania to make a truck delivery to Utah, which had not been approved by adult probation. ***See*** N.T. Pre-Trial Hearing, 8/16/21, at 2-3. The trial court issued a bench warrant and Fernandez was arrested in Utah. ***See id.***

requisite knowledge or intent to make a materially false statement?" Brief for Appellant, at 4.

Fernandez argues that the Commonwealth presented insufficient evidence to sustain his conviction of materially false written statement – purchase, delivery, transfer of firearm. *See id.* at 10-18. Fernandez asserts that the testimony and evidence at trial demonstrated that he was confused about the language on the Form and, therefore, he could not have made a knowing or intentional false statement. *See id.* at 13-16. Fernandez further contends that, on June 2, 2020, he filed an appeal to correct his mistake. *See id.* at 17-18. Fernandez posits that, even though the language contained in the PFA order and the Form was similar, there was no evidence that Fernandez was aware of those similarities on June 1, 2020, when he attempted to purchase firearms. *See id.* at 16.

We adhere to the following standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not [re-]weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually

received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).

"Any person, purchaser or transferee commits a felony of the third degree if, in connection with the purchase, delivery[,] or transfer of a firearm under this chapter, he knowingly and intentionally: . . . (ii) makes any materially false written statement, including a statement on any form promulgated by Federal or State agencies[.]" 18 Pa.C.S.A. § 6111(g)(4)(ii).

The Crimes Code defines knowingly and intentionally as follows:

**(b) Kinds of culpability defined.**--

(1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S.A. § 302(b)(1)-(2).

Instantly, the trial court addressed Fernandez's claim as follows:

[Fernandez] contends that the Commonwealth "failed to provide sufficient evidence that [Fernandez] knew he was subject to a court order restraining him 'from harassing, stalking, or threatening' his 'child or an intimate partner or child of such partner.'" This contention is without merit and belied by the record.

The [c]ourt took judicial notice that on April 23, 2020, a [PFA o]rder [] was entered against [Fernandez]. This PFA protects an intimate partner or wife[.] Moreover, the PFA directs that:

> [Fernandez] shall not abuse, **harass, stalk, threaten**, or attempt to threaten to use physical force against any of the above persons in any place where they might be found.

[] Commonwealth Exhibit [] 2 (emphasis added). The PFA had an effective date of April 23, 2020, and had an expiration date of January 31, 2021. Hence, [on] June 1, 2020 . . ., the PFA was still in effect. Furthermore, [Fernandez] was admittedly present at the PFA [hearing] by telephone when this order was issued. [Fernandez] further admits that the PFA would have been served on him at some point after the hearing, and that it was, in fact, delivered to him at some point. Moreover, the address provided by [Fernandez] on the [Form] is the same address listed on the PFA. Hence, the jury could reasonably conclude that [Fernandez] received a copy of the PFA order prior to June 1, 2020. Moreover, the jury could also reasonably conclude that because [Fernandez was] present at the PFA hearing and received a copy of the PFA order, he was well aware of the contents of that PFA order.

[Furthermore], **the next day** (June 2, 2020), after [Fernandez's] request to purchase [] firearm[s] was denied, [Fernandez] completed a [PICS] Challenge form. On that [] form, [Fernandez] initially answered "no" to the question "are you the subject of a current protection from abuse order," but then checked "yes" and initialed it. [Fernandez] did this, even though [] he was never told the specific reason for the denial. This is additional circumstantial evidence that [Fernandez] knew the contents of the PFA order, and that he also knew that the reason he was denied was because

he checked "no" in response to [question 11.h. on the Form,] even though he should have checked "yes" due to the PFA order currently in effect.

* * *

[Further, Fernandez] admits that he answered [question 11.h.] by checking "no," but claims that he was confused about the paperwork and he did not understand the question. While [Fernandez] is correct that [question 11.h.] does not specifically say "PFA" or "Protection From Abuse," it does mirror the language . . . [i]n the PFA [order]. From this evidence, the jury could reasonably conclude that [Fernandez] knew exactly what question [11.h.] was asking him.

[Fernandez also] claimed that he was in a hurry when he filled out that form. However, [Fernandez] admit[ted] that[,] despite allegedly being in a hurry, he was still able to answer every other question accurately, as evidenced by his "yes" answer to question [11.a.] and his answer of ["not applicable"] to question [12.d.2.]. In addition, and as previously indicated, [Fernandez]'s completion of the [PICS] Challenge form only one day later and checking "yes" to the question about being the subject of a PFA, indicates that without being told the reason for the denial, he knew exactly why he was being denied—because he checked "no" in response to [question 11.h.] when he should have checked "yes."

The jury apparently did not find [Fernandez] to be credible, which they were entitled to do. Moreover, given the foregoing, it was reasonable for the jury to conclude that [Fernandez] knew that because of the PFA in effect at the time, he should have answered question [11.h.] "yes," but intentionally answered "no," and [that Fernandez] did so because he did not want his application to purchase the firearms to be denied.

Trial Court Opinion, 8/22/23, at 2-6 (some citations omitted). Moreover, as we noted *supra*, Fernandez admitted that he had the PFA order with him on June 1, 2020. *See* N.T. Jury Trial (Day 1), 2/27/23, at 99-100.

After reviewing the record, we agree with the trial court's sound conclusions and determinations. *See Smith*, *supra*. Fernandez's claims are

belied by the record, as we detailed **supra**.  Consequently, we afford him no relief.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/30/2024